Larry STEPHENS, and Entre Savannah, Inc., a Georgia corporation, Plaintiffs,

v.

ENTRE COMPUTER CENTERS, INC.; a Delaware corporation, Entre Computer Centers of America, Inc., a Delaware corporation, Steven Heller, and James J. Edgette, Defendants.

Civ. A. 4:87–CV–269–HLM.

United States District Court, N.D. Georgia, Rome Division.

Sept. 21, 1988.

---

John E. Sawhill, III, Rome, Ga., Edward A. McConwell, Overland Park, Kan., for plaintiffs.

Julian D. Fleming, Jr., Sutherland Asbill & Brennan, Atlanta, Ga., Wesley G. Howell, Jr., Gibson Dunn & Crutcher, Washington, D.C., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

Plaintiffs commenced this diversity of citizenship action claiming fraudulent inducement, fraud, breach of contract and breach of fiduciary duty arising out of a franchise agreement. Presently before the Court is defendants' motion to dismiss for improper venue and lack of personal jurisdiction.

An explanation of the relationships between the parties is necessary before the various arguments can be addressed fully. Plaintiff Larry Stephens, as franchisee, entered into an agreement with defendant franchisor Entre Computer Center, Inc. (Entre) to operate a computer center in Savannah. In fulfilling that agreement, Stephens incorporated plaintiff Entre Savannah, Inc.

Defendant Edgette signed the agreement on behalf of Entre. Defendant Steven Heller is an officer of defendant Entre Computer Centers of America, Inc., a wholly owned subsidiary of the franchisor.

In their motion to dismiss, defendants argue the action should be dismissed based on a clause in the franchise agreement specifying Virginia as the forum for bringing actions. They argue alternatively that they lack the requisite "minimum contacts" for this Court to exercise personal jurisdiction over them. Plaintiffs argue that the forum selection clause is unenforceable, that venue is proper in this Court, and that

defendants are subject to this Court's personal jurisdiction.

## I

The Supreme Court has decided recently that a motion to enforce a forum selection clause in a diversity case is governed by the federal venue statute, 28 U.S.C. § 1404(a). *Stewart Organization, Inc. v. Ricoh Corp.,* — U.S. —, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). At the outset, however, the Court must resolve disputes between the parties as to the applicability of the clause to the facts of the case, as the enforcement issue need not be reached if the clause does not even apply.[1] The clause reads as follows:

> The parties agree that any action brought by either party in any court, whether federal or state, shall be brought within the Commonwealth of Virginia and do hereby waive all question of personal jurisdiction or venue for the purposes of carrying out this provision.

Plaintiffs argue that the clause is inapplicable because (1) it does not cover their tort claims; and (2) some of the parties in this action did not sign the contract. Defendants respond that all actions arising from the contract are covered by the clause, and that those who did not sign the contract were related to those who did, such that the clause applies to all of them.

## A

■ Plaintiffs' argument that the clause does not apply because they have filed claims sounding in tort in addition to ones in contract was rejected by the Eleventh Circuit in *Stewart Organization, Inc. v. Ricoh Corp.,* 810 F.2d 1066 (11th Cir.1987) (*en banc*) *aff'd and remanded on other grounds,* — U.S. —, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). The clause in that case referred to any "case or controversy arising under or in connection with this Agreement." The district court had expressed concern that claims which were not contractual in nature, including tort claims,

were not covered by that language. The Eleventh Circuit found, however, that the clause covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Id.* 810 F.2d at 1070; *accord Farmland Industries, Inc. v. Frazier–Parrott Commodities, Inc.,* 806 F.2d 848, 852 (8th Cir.1986); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 720 (2d Cir.1982). The Eleventh Circuit explained that "commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law." *Stewart Organization,* 810 F.2d at 1070.

The clause in the instant case is at least as broad as the one in *Stewart Organization* as it refers to "any action" and does not explicitly limit the actions to ones arising "under or in connection with" the contract. Plaintiffs' tort claims are that defendants' fraudulent misrepresentations caused them to enter the agreement in the first instance, and then to invest significant funds to continue operating the computer center after the business was not as successful as they had anticipated. All these claims arise either "directly or indirectly from the business relationship evidenced by the contract," and are therefore subject to the forum selection clause.

## B

■ Plaintiffs' argument that the clause does not apply to the parties who did not sign the contract is more problematic. In *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), the district court had found a forum selection clause unenforceable because, among other reasons, Coastal was a third-party beneficiary to the contract and as such was not involved in the bargaining process. The Third Circuit cited the Supreme Court's statement in *M/S*

---

1. Although the parties do not divide their arguments into the applicability and enforceability

of the clause, the Court does so for clarity.

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8–9, 13–14, 92 S.Ct. 1907, 1912–1913, 1914–1915, 32 L.Ed.2d 513 (1972), that enforcement of forum selection clauses promotes stable and dependable trade relations, and found that carving out a third-party beneficiary exception would be inconsistent with that rationale. It noted that Coastal chose to do business with a party to the contract, an English firm that would be acquiring parts from other English firms. The court found it "perfectly foreseeable that Coastal would be a third-party beneficiary of an English contract, and that such a contract would provide for litigation in an English court." Accordingly, the court rejected the district court's refusal to enforce the clause based on the fact that Coastal was not a party to the contract. *Id.*, 709 F.2d at 202–03.[2]

Several district court opinions similarly have ruled that the transaction participants, be they parties or non-parties to the contract, benefit from, and are subject to, a forum selection clause. *See Adelson v. World Transportation, Inc.*, 631 F.Supp. 504, 508 (S.D.Fla.1986); *Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D.Ill.1984); *see also, Friedman v. World Transportation, Inc.*, 636 F.Supp. 685, 690–91 (N.D.Ill.1986) (a party cannot escape his contractual obligation to sue in a specified forum merely by joining additional parties who did not sign the contract); *Dukane Fabrics International, Inc. v. M.V. Hreljin*, 600 F.Supp. 202, 203 (S.D.N.Y.1985) (a party that was authorized to accept bills of lading on behalf of another party is bound by the forum selected in the bills).

*Snider v. Lone Star Art Trading Co., Inc.*, 659 F.Supp. 1249 (E.D.Mich.1987) *aff'd*, 838 F.2d 1215 (3d Cir.1988), cited for support by plaintiffs, is inapposite. In *Snider*, there were six agreements and multiple defendants, and the forum selection clause was contained in but one of the agreements with one of the defendants. The *Snider* court found the clause unenforceable based on equity and the efficient administration of justice. 659 F.Supp. at 1257–58. On reconsideration, the court implied that it might have ruled otherwise had the clause been contained in one central document. 672 F.Supp. 977, 980 (E.D. Mich.1987). In the instant case, there is but one document.[3]

Based on these cases, the Court finds that the instant clause applies to all the parties to this action whether or not they signed the contract. As discussed, all the claims arise directly or indirectly from the franchise agreement; that single document

---

**2.** Plaintiffs state that the *Coastal Steel* court "suggested" that the clause is enforceable against a non-signatory only if that party is a third-party beneficiary of the contract. A careful reading of the opinion indicates the court rejected a rigid "third-party beneficiary rule" and focused instead on the foreseeability of the clause: Coastal's third-party beneficiary status supported the conclusion that the clause was foreseeable. *See Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D.Ill.1984) (*Coastal Steel* held the clause enforceable because its existence was foreseeable to the party, particularly because the party was a third-party beneficiary).

Plaintiffs further argue that *Coastal Steel* found the clause enforceable because a defendant who was not a party to the contract had consented to litigation in England and its role in the action was "minuscule." Plaintiffs reason that the non-party defendants in this action had large roles and therefore the clause is inapplicable. Again, plaintiffs' reading of the opinion is not entirely accurate. The Third Circuit found the clause applicable notwithstanding the presence of a non-party defendant for two *separate* reasons. First, the non-party defendant had consented to litigation in England and therefore plaintiff would not need to bring separate actions. Second, the non-party defendant was the parent company of a defendant company that was a party to the contract, and the pleadings suggested that the two companies were liable jointly for plaintiff's losses.

The defendants in the instant case, by moving for enforcement of the forum selection clause, have indicated their consent to suit in that forum. Their presence, standing alone, does not bar enforcement of the clause.

**3.** The *Snider* court found further that the clause was not enforceable because one of the claims was brought under RICO, 18 U.S.C. § 1961 *et seq.*, and, under Michigan law, the RICO venue statute governed. That portion of the *Snider* opinion is distinguishable from the instant action because plaintiffs have not asserted a RICO or other federal question issue. Further, as discussed *infra* n. 4, the Supreme Court has determined that federal law, and not state law, governs enforcement of these clauses. To the extent that *Snider* applied Michigan law to reach its conclusion, the case has been implicitly overruled.

connects all the plaintiffs with all the defendants. The question remaining is the enforceability of the clause as a matter of federal law.

## II

] As stated, a motion to enforce a forum selection clause is governed by 28 U.S.C. § 1404(a). *Stewart Organization*, 108 S.Ct. at 2243. Section 1404(a) allows a district court, for the convenience of the parties and witnesses and in the interest of justice, to transfer a case to a court where the case might have been brought. The court must weigh the plaintiff's forum choice against considerations of convenience, cost, judicial economy, and expedition of discovery and trial processes. *Intergraph Corp. v. Stottler, Stagg & Associates, Inc.*, 595 F.Supp. 976, 978 (N.D.Ala. 1984), citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1956).

"The presence of a forum selection clause ... [is] a significant factor that figures centrally in the District Court's calculus." *Stewart Organization*, 108 S.Ct. at 2244. The Court should consider the fairness of the selected forum in terms of the relative bargaining powers of the parties. *Id.*

The Supreme Court stated further that *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), an admiralty case, "may prove instructive" in resolving disputes over forum selection clauses in domestic cases. *Stewart Organization*, 108 S.Ct. at 2243. The *Bremen* court had ruled that a forum selection clause should be enforced unless the party opposing enforcement "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for fraud or overreaching." *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916.[4] "[I]f the chosen forum is *seriously* inconvenient for the trial of the action," *id.* at 16, 92 S.Ct. at 1916 (emphasis in original), the clause is unreasonable and thus unenforceable. Under *Bremen*'s fraud exception to enforcement, the inclusion of the clause itself must be the product of fraud or coercion. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974).[5]

Finally, the § 1404(a) analysis is "flexible and individualized" and is committed to the court's sound discretion. *Stewart Organization*, 108 S.Ct. at 2244; *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir.1982).

---

**4.** The *Bremen* court stated also that the "clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought." 407 U.S. at 15, 92 S.Ct. at 1916. Plaintiffs note that forum selection clauses are unenforceable under Georgia law and that *Stewart Organization* stated that *Bremen* might prove instructive. They argue that the Supreme Court left open the possibility that the forum's law is relevant.

Plaintiffs are correct that forum selection clauses are contrary to Georgia public policy. *See Cartridge Rental Network v. Video Entertainment, Inc.*, 132 Ga.App. 748, 209 S.E.2d 132 (1974); *Fidelity & Deposit Company of Maryland v. Gainesville Iron Works, Inc.*, 125 Ga.App. 829, 189 S.Ed.2d 130 (1972). However, their argument about the relevance of Georgia law is rejected because the Supreme Court unequivocally stated that transfers of cases within the federal court system involve procedural rules and are purely matters of federal law. *Stewart Organization*, 108 S.Ct. at 2245.

**5.** Plaintiffs argue that due to the fiduciary relationship between the parties, the fraud need not

pertain to the inclusion of the clause, as they would not have entered the agreement—and would not be subject to the clause—but for the fraudulent misrepresentations. Plaintiffs accurately cite *Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 851–52 (8th Cir.1986) for support.

The Court declines to follow *Farmland* as fraud can vitiate a contract whether or not there is a fiduciary relationship. An exception for such a relationship does not seem warranted and appears to the Court to be inconsistent with the *Scherk* rule articulated in the text. *See also Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967) (an agreement to arbitrate was enforceable despite plaintiff's allegation of fraud in the inducement of the contract because, among other things, there was no claim that the arbitration clause itself was induced by fraud).

Despite this conclusion, as stated in the text, *Stewart Organization* states that the Court should consider the fairness of the selected forum in terms of the relative bargaining powers of the parties. 108 S.Ct. at 2244.

In the instant case, plaintiffs present, essentially, five reasons against enforcement: (1) Virginia is no more convenient than Georgia; (2) defendants have more money and can more easily litigate in Georgia than plaintiffs can in Virginia; (3) the contract was induced by fraud; (4) the clause was boilerplate non-negotiable language of which Stephens had no specific knowledge; and (5) defendants have not moved to enforce the clause in other cases filed outside Virginia. Defendants maintain that the clause is reasonable and enforceable.

The parties represent that witnesses and evidence are located in both Virginia and Georgia, among other places. The Court finds that the witnesses and evidence are not located in significantly closer proximity to either forum and, although Georgia litigation would be inconvenient to defendants, Virginia litigation would likewise inconvenience the plaintiffs. Absent the forum selection clause, therefore, the Court would be inclined to uphold plaintiffs' forum choice.

However, the Court is not persuaded that the forum selection clause is unreasonable. Virginia is a reasonable forum as two of the defendants and several potential witnesses reside there and the contract states that Virginia law controls its terms. Although plaintiffs state that they have fewer funds than defendants, they have more than adequate financial resources to litigate in Virginia.

Plaintiffs' allegations of fraud in the inducement of the agreement concern misrepresentations of projected sales and profits and have no connection to the inclusion of the clause.[6] Defendants may not have been willing to negotiate the clause due to superior bargaining power, but that alone is not coercion—plaintiff Stephens could have refused to sign the contract. Further, Stephens's representation that he had no specific knowledge of the clause is of no moment. The clause is not hidden; it is printed in the same type as the rest of the document. Stephens concedes that he is not "new to the business world," and he therefore knows that he should apprise himself of all the contractual provisions.

Lastly, the Court rejects plaintiffs' argument that defendants' failure to move to enforce identical clauses in other cases filed outside Virginia makes it unreasonable to enforce the clause in this case. Defendants have the prerogative to move to enforce the instant clause regardless of how they choose to defend other lawsuits.

In sum, the Court finds that neither Virginia nor Georgia is more convenient to litigate this case. The Court further finds that the forum selection clause is reasonable. Based on these findings, the Court concludes that the § 1404(a) factors tip in favor of enforcing the clause.

### III

Defendants argue that, if the clause is enforced, this Court should transfer the action to the United States District Court for the Eastern District of Virginia. Virginia has two federal districts, and neither the clause nor plaintiffs indicate which district is appropriate. The Court does note that plaintiffs have appended, as Exhibit Q to their opposition brief, a list from the Federal Trade Commission of litigation involving Entre franchises. All the Virginia cases on that list are in the Eastern District. The Court will therefore grant defendants' request.

ACCORDINGLY, the case is TRANSFERRED to the United States District Court for the Eastern District of Virginia.[7]

---

**6.** Plaintiffs also allege fraud due to misrepresentations made after the computer center had opened. These alleged misrepresentations, made after the contract was signed, do not pertain to the inclusion of the clause and are not considered by the Court in its § 1404(a) analysis.

**7.** The personal jurisdiction arguments are not reached because the Court has decided to enforce the clause. *See Aguacate Consolidated*

*Mines, Inc. of Costa Rica v. Deeprock, Inc.,* 566
F.2d 523, 524 (5th Cir.1978) (a court can trans-fer a case under § 1404(a) even if no personal
jurisdiction exists).