# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00482-CV

**James Young, Robert Worrall and Shannon Gustafson, Appellants**

**v.**

**Valt.X Holdings, Inc., Dennis L. Meharchand, and Brian Groh, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
## NO. D-1-GN-09-001344, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

Following a securities transaction, James Young, Robert Worrall, and Shannon Gustafson (collectively, "Buyers") sued Valt.X Holdings, Inc. ("Valt.X"), Dennis Meharchand, and Brian Groh (collectively, "Sellers") based on numerous claims, including conspiracy, common law fraud, fraud in a stock transaction, negligence and gross negligence, violations of the Texas Deceptive Trade Practices Act (DTPA), breach of fiduciary duty, declaratory judgment, rescission and restitution, breach of contract, and violations of federal and Texas securities laws, including the Federal Securities Act of 1933, 15 U.S.C.A. §§ 77a-77aa (2009), the Federal Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78a-78pp (2009), and the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. arts. 581-1 to 581-43 (Vernon 1964 & Supp. 2009). Buyers filed their petition in Travis County district court. Sellers filed a motion to dismiss, citing a forum-selection clause that stated

that any suits concerning the sale of securities to Buyers must be brought in the courts of Ontario, Canada. The trial court granted the motion to dismiss. We affirm the judgment of the trial court.

## BACKGROUND

In October 2006, Valt.X, an Ontario-based computing company, offered Buyers common stock through Brian Groh, its promoter. In February 2007, Buyers purchased $100,000 in Valt.X stock. The shareholder agreement concerning the sale of the stock included a forum-selection clause, which states, "The parties hereto each hereby agrees to the exclusive jurisdiction of the Courts of Ontario to adjudicate any and all disputes arising under or relating to this Agreement and/or the sale, purchase or holding of the [Valt.X] Common Shares."[1]

Buyers allege in their pleadings and on appeal that they later discovered that Groh made numerous misrepresentations regarding Valt.X in offering the stock to Buyers, and that Valt.X failed to disclose facts concerning the investment characteristics of the Valt.X stock and the risks associated with the stock.[2] Buyers also allege that Valt.X neglected to register a Regulation D filing

---

[1] The shareholder agreement also included a choice-of-law provision, entitled "Governing Law," which states, "This Agreement is governed by and shall be construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable therein."

[2] Specifically, Buyers allege that Groh stated that Valt.X stock was guaranteed to generate a return of ten times Buyers' initial investment, the stock was guaranteed to return all of Buyers' initial investment, the stock was worth no less than $1 per share, Valt.X was profitable at the time of the sale of stock, the technology developed by Valt.X would be included in computers shipping in 2006, licensing fees for the technology would be substantial, revenue-generating agreements had been completed or were in progress, large banks and financial institutions had invested millions of dollars in Valt.X, Valt.X was exempt from filing with the U.S. Securities and Exchange Commission, and Valt.X had raised $4 million as of fall 2006.

2

with the Securities and Exchange Commission until March 2007, failed to list Groh on the filing, and overstated its equity by $2.8 million.

After discovering the alleged misrepresentations regarding the Valt.X stock, Buyers demanded and were allegedly promised a refund. When no refund was forthcoming, Buyers filed suit against Valt.X, Groh, and Dennis Meharchand, the CEO of Valt.X, in Travis County district court. The original petition included causes of action for conspiracy, common-law fraud, fraud in a stock transaction, negligence and gross negligence, DTPA violations, breach of fiduciary duty, declaratory judgment, rescission and restitution, and violations of the Texas Securities Act. In an amended petition, Buyers added a claim for violations of federal securities laws, and also added a claim for breach of contract that was later dropped.

Sellers filed a motion to dismiss all of Buyers' claims based on the forum-selection clause, arguing that any claims relating to the Valt.X stock must, under the shareholder agreement, be brought in the courts of Ontario, Canada. The trial court granted the motion and dismissed Buyers' claims, and this appeal followed.

**STANDARD OF REVIEW**

A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit. *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.). As with our review of rulings on motions to dismiss generally, we review a trial court's ruling on a motion to dismiss based on a forum-selection clause for abuse of discretion. *Id.* The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles

3

or, stated another way, whether its decision was arbitrary or unreasonable. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003). However, to the extent that our review involves contractual interpretation of a forum-selection clause—a legal matter—the standard of review is de novo. *See Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, pet. denied).

## DISCUSSION

On appeal, Buyers argue that the trial court erred in enforcing the forum-selection clause and dismissing their claims. Specifically, Buyers argue that the clause does not apply to their claims, the antiwaiver provisions of federal and Texas securities laws prevent enforcement of the forum-selection clause, and the forum-selection clause is invalid because the contract involving the sale of the stock was tainted by fraud.[3]

Under federal and Texas law, forum-selection clauses are prima facie valid. *See M/S Bremen v. Zapata Off-Shore Co.* ("*The Bremen*"), 407 U.S. 1, 9 (1972);[4] *In re AIU Ins. Co.*,

---

[3] Buyers also argue that Sellers consented to suit in Texas, thereby waiving enforcement of the forum-selection clause, by filing a Uniform Consent to Service of Process designating an officer for Valt.X in Texas. However, while a copy of this consent form was attached to Buyers' brief, it was not included in the trial record. Further, Buyers did not invoke any authority in support of their argument that the forum-selection clause had been waived by the filing of the form. *See* Tex. R. App. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). In addition, we note that a party waives a forum-selection clause only by substantially invoking the judicial process to the other party's detriment or prejudice, and that there is a strong presumption against such waiver. *See In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010).

[4] While *The Bremen* is an admiralty case, two years after it was decided the Supreme Court "implicitly extended *The Bremen*'s holding beyond the realm of admiralty by applying it to a claim brought under the federal securities laws" in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518-21 (1974). *Haynsworth v. Lloyd's of London*, 121 F.3d 956, 962 (5th Cir. 1997).

4

148 S.W.3d 109, 114 (Tex. 2004) (discussing and adopting reasoning of *The Bremen*); *Phoenix Network Techs.*, 177 S.W.3d at 618 (applying standards from *The Bremen* in dispute involving forum-selection clause). The party seeking to enforce a contractual forum-selection provision has the initial burden of establishing that the parties entered into an agreement to an exclusive forum and that the agreement applies to the claims involved. *See Phoenix Network Techs.*, 177 S.W.3d at 611-12 & n.6.

Assuming the party seeking enforcement establishes these prerequisites, the burden shifts to the party opposing enforcement to make a "strong showing" overcoming the prima facie validity of the forum-selection clause. *Id.* at 611 (quoting *The Bremen*, 407 U.S. at 10). Under this framework, a forum-selection clause must be enforced unless "the party opposing enforcement of the clause can clearly show that (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 231-32 (Tex. 2008) (per curiam); *see In re Automated Collection Techs.*, 156 S.W.3d 557, 559 (Tex. 2004) (per curiam) (enforcement of forum-selection clause is "mandatory" unless party opposing enforcement meets this burden); *see also Haynsworth v. Lloyd's of London*, 121 F.3d 956, 963 (5th Cir. 1997) (reciting substantively identical standard under federal law) (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991) and *The Bremen*, 407 U.S. at 12-13). The party resisting enforcement of the forum-selection clause bears a "heavy burden" of proof. *Phoenix Network Techs.*, 177 S.W.3d at 611 (quoting *The Bremen*, 407 U.S. at 15).

5

*Applicability of Clause to Buyers' Claims*

As a threshold matter, we determine whether the forum-selection clause in this case encompasses the Buyers' claims.[5] In analyzing the clause, we turn to principles of contract interpretation. *See Southwest Intelecom*, 997 S.W.2d at 324-25. Our primary objective in construing a written contract is to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). Contract terms are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). If a contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous and is construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

In this case, the clause states, "The parties hereto each hereby agrees to the exclusive jurisdiction of the Courts of Ontario to adjudicate any and all disputes arising under or relating to this Agreement and/or the sale, purchase or holding of the [Valt.X] Common Shares." The plain language of the clause encompasses each of Buyers' claims, including the fraud, fiduciary duty, and securities claims that form the basis of this appeal. Each claim "arises under" or "relates to" the stock sale or the agreement to purchase the stock signed by Buyers. *See Clark v. Power Mktg.*

---

[5] Buyers do not challenge the validity of the shareholder agreement or its designation of an exclusive forum. *See Phoenix Network Techs. (Europe) Ltd. v. Neon Sys.*, 177 S.W.3d 605, 611, 612 n.6 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (discussing threshold requirements for enforcement of forum-selection clause).

*Direct, Inc.*, 192 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that broadly drafted forum-selection clause encompassed claim of fraud in the inducement).

Buyers argue that their claims are broader than the scope of the forum-selection clause. In support of this argument, Buyers point to a federal case decided by the Eighth Circuit, *Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.*, which also involved claims of fraud and breach of fiduciary duty relating to the sale of securities. 806 F.2d 848, 851-52 (8th Cir. 1986). In *Farmland*, the court held a forum-selection clause inapplicable because the "suit was broader than the clause" in a manner that could not have been anticipated at the time the clause was agreed to. *Id.* at 852. However, the scope of the allegations was significantly broader in *Farmland*, as the suit involved not only the seller of the securities, "but also . . . other individuals outside the securities brokerages, sham corporations, and other matters not subject to the agreement." *Id.* No similarly far-reaching allegations are present in this case, as each of Buyers' claims involves events surrounding the specific transaction for the sale of Valt.X stock. Accordingly, we conclude that the language of the forum-selection clause encompasses Buyers' claims.

*Antiwaiver Provisions*

We turn next to Buyers' arguments that the forum-selection clause is voided by the antiwaiver provisions of federal and Texas securities laws, and that enforcement of the clause contravenes the public policy embodied in the antiwaiver provisions.[6] *See Lyon Fin. Servs.*,

_____

[6] While Buyers only challenge the applicability of the forum-selection clause of the shareholder agreement, many of their arguments concern the law that would be applied to their claims in Ontario courts. To the extent that Buyers' arguments implicate the agreement's choice-of-law provision specifying "the laws of the Province of Ontario and the laws of Canada applicable therein," we note that our analysis of the forum-selection clause applies equally to the applicability

7

257 S.W.3d at 231-32 (holding that forum-selection clauses may be held unenforceable when "enforcement would contravene a strong public policy of the forum where the suit was brought"); *see also Haynsworth*, 121 F.3d at 963 (same).

Section 14 of the Securities Act of 1933 provides: "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." 15 U.S.C.A. § 77n. Section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78cc(a), and the antiwaiver provision of the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. art. 581-33L, are substantively identical for purposes of the issue before us. *See Haynsworth*, 121 F.3d at 966 (comparing antiwaiver provisions of Securities Act of 1933, Securities Exchange Act of 1934, and Texas Securities Act).[7]

Texas courts have not confronted the issue of whether the antiwaiver provisions of U.S. securities laws bar enforcement of a clause specifying a foreign forum or designating the application of foreign law. However, the Fifth Circuit addressed the interplay of forum-selection/choice-of-law clauses and the antiwaiver provisions of federal and Texas securities laws

---

of the choice-of-law provision. *See generally Haynsworth*, 121 F.3d 956 (treating international forum-selection and choice-of-law provisions as identical for purposes of determining validity and applicability).

[7] Section 29(a) of the Securities Exchange Act of 1934 states, "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." 15 U.S.C.A. § 78cc(a) (2009). The antiwaiver provision of the Texas Securities Act states, "A condition, stipulation, or provision binding a buyer or seller of a security or a purchaser of services rendered by an investment adviser or investment adviser representative to waive compliance with a provision of this Act or a rule or order or requirement hereunder is void." Tex. Rev. Civ. Stat. Ann. art. 581-33L (West Supp. 2009).

in *Haynsworth*. *See id.* at 962-63. The *Haynsworth* court based its analysis on the U.S. Supreme Court's decision in *The Bremen*, which set out the framework for analyzing international contracts that specified the forum and the applicable law governing disputes. *Id.* In *The Bremen*, the Supreme Court stated that courts should enforce choice of law and choice of forum clauses in cases of "freely negotiated private international agreement[s]." 407 U.S. at 12-13. In so doing, the Court rejected as a "parochial concept" the idea that, "notwithstanding solemn contracts, . . . all disputes must be resolved under our laws and in our courts." *Id.* at 9. This rationale was further explained by the Supreme Court in *Scherk v. Alberto-Culver Co.*, a securities case, in which the Court held that "[t]o determine that 'American standards of fairness' must nonetheless govern the controversy demeans the standards of justice elsewhere in the world, and unnecessarily exalts the primacy of United States law over the laws of other countries." 417 U.S. 506, 517 n.11 (1974). Accordingly, the *Scherk* Court "rejected the idea that the antiwaiver provisions of U.S. securities laws bar enforcement of forum-selection clauses in international transactions." *Haynsworth*, 121 F.3d at 969.

The *Haynsworth* court also looked to Second Circuit precedent analyzing the practical consequences of failing to enforce international forum-selection clauses:

> It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum selected in the agreement. A plaintiff simply would have to allege violations of *his country's* tort law or *his country's* statutory law or *his country's* property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction. We refuse to allow a party's solemn promise to be defeated by artful pleading.

9

*Id.* at 969 (quoting *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (emphasis in original)). Based on this logic, and on the Supreme Court precedent in this area, the court concluded that "the antiwaiver provisions of U.S. securities laws do not bar enforcement of the [forum-selection] clause." *Id.* The court continued, "The same reasoning compels an identical conclusion as to the antiwaiver provisions of the Texas Securities Act and the DTPA." *Id.*

In this case, Buyers nonetheless argue that the statutory language of the antiwaiver provisions voids any contract that would have the effect of waiving enforcement of U.S. securities laws. However, Buyers' argument not only conflicts with the result in *Haynsworth* and the Supreme Court precedents in *The Bremen* and *Scherk* that underpin that decision, but also relies primarily on a single Ninth Circuit opinion that has been withdrawn.[8] *See Govett Am. Endeavor Fund v. Trueger*, 112 F.3d 1017 (9th Cir. 1997) (withdrawn by the court May 29, 1998). *Govett* was based on Ninth Circuit precedent holding that the antiwaiver provisions of federal securities law voided forum-selection clauses specifying a foreign forum. *See Richards v. Lloyd's of London* ("*Richards I*"), 107 F.3d 1422 (9th Cir. 1997), *overruled on reh'g en banc*, 135 F.3d 1289 (9th Cir. 1998). However, the precedent on which *Govett* relied was itself withdrawn and superseded by an en banc Ninth Circuit, which, citing *The Bremen*, *Scherk*, and *Haynsworth*, held that U.S. securities laws do not void forum-selection clauses in international agreements. *See Richards v. Lloyd's of London* ("*Richards II*"), 135 F.3d at 1293-94. Accordingly, Buyers have presented no persuasive authority

---

[8] Buyers also cite to *SEC v. Ross*, 504 F.3d 1130, 1139 (9th Cir. 2007), for a general discussion of the jurisdiction of U.S. courts over claims involving the Securities Act of 1933. *Ross*, however, does not involve a contractual forum-selection clause, and is consequently inapplicable to the issues in this case.

for the proposition that the antiwaiver provisions void the forum-selection clause agreed to in this case.[9]

Buyers also argue that enforcement of forum-selection clauses like the one at issue here would "deny [Buyers] and future Texans the protections afforded by" federal and Texas securities laws, thereby contravening public policy. However, federal and Texas courts have explained that public policy "strongly" favors enforcement of forum-selection clauses. *See Haynsworth*, 121 F.3d at 966-67;[10] *AIU*, 148 S.W.3d at 113 (stating that forum-selection clauses have "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions") (quoting *Shute*, 499 U.S. at 593-94). Further, the securities laws involved in this appeal would only be affected in cases where the parties exercised their rights to freely and voluntarily enter into a contract that

---

[9] Buyers also argue that, as Canada has no jurisdiction to hear cases involving U.S. securities laws, Buyers have "no effective venue to prosecute their claims." To the extent that this argument can be construed to allege that the forum-selection clause is "unreasonable or unjust" because it deprives Buyers of a remedy, *see Haynsworth*, 121 F.3d at 963, we note that Buyers have not presented any evidence that Canadian securities laws offer lesser protections than U.S. securities laws. Therefore, Buyers have not met their "heavy burden" to invalidate the clause based on a lack of remedy. *See Phoenix Network Techs.*, 177 S.W.3d at 611 (discussing burden of proof).

[10] As explained in *Haynsworth*, "[U]ncertainty as to the forum for disputes and applicable law will almost inevitably exist with respect to any contract touching two or more countries. That is, the elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." 121 F.3d at 962 (citing *Scherk*, 417 U.S. at 516 and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13-14 (1972) (internal citations and quotations omitted)). Accordingly, the "Supreme Court has therefore instructed American courts to enforce [forum-selection] clauses in the interests of international comity and out of deference to the integrity and proficiency of foreign courts." *Mitsui & Co. (USA) v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985)).

mandated that suits be brought in the courts and under the laws of another country. Any party wishing to avail itself of the protections of federal or Texas securities laws could choose not to agree to a forum-selection provision designating a foreign forum or mandating the application of foreign law. Accordingly, Buyers have not met their "heavy burden" to show that the forum-selection clause is unenforceable for public-policy reasons. *See Phoenix Network Techs.*, 177 S.W.3d at 611.

Based on this analysis, we are persuaded by the Fifth Circuit's reasoning in *Haynsworth*, especially in light of the fact that Texas courts have adopted federal standards for analyzing forum-selection clauses. *See AIU Ins. Co.*, 148 S.W.3d at 111-14 (discussing *The Bremen*); *see also Phoenix Network Techs.*, 177 S.W.3d at 611-14 (discussing and applying federal standards regarding forum-selection clauses). We consequently hold that the antiwaiver provisions of federal and Texas securities laws do not bar enforcement of the forum-selection cause in this case.

### *Fraud or Overreaching*

Buyers next argue that the forum-selection clause is unenforceable because the clause is invalid for reasons of fraud or overreaching. *See Lyon Fin. Servs.*, 257 S.W.3d at 231-32 (holding that forum-selection clauses may be held unenforceable when "the clause is invalid for reasons of fraud or overreaching"); *see also Haynsworth*, 121 F.3d at 963 (same). Specifically, Buyers argue that, had they "known of the fraud promulgated by Appellees, they would not have entered into the Agreement."

Federal courts have held that the fraud or overreaching in question must involve the negotiation of the forum-selection clause itself: "Fraud and overreaching must be specific to a forum selection clause in order to invalidate it." *Haynsworth*, 121 F.3d at 963 (quoting *Scherk*, 417 U.S.

12

at 519 n.14). Similarly, Texas courts have held that a general allegation of fraud is not sufficient to bar operation of a forum-selection clause. *See Clark*, 192 S.W.3d at 800 (holding that forum-selection clause in contract was enforceable though claim involved pre-contractual fraud in the inducement); *cf. In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004) (enforcing jury-waiver and arbitration clauses and stating that "[a]ny provision relating to the resolution of future disputes, included as part of a larger agreement, would rarely be enforced if the provision could be avoided by a general allegation of fraud directed at the entire agreement").

Buyers do not argue that the alleged fraud was specific to the forum-selection clause, but rather that the agreement and the stock transaction as a whole involved fraud. As discussed above, this argument conflicts with federal and Texas precedent in this area. While Buyers rely on the *Farmland* case for the proposition that the alleged fraud need not be specific to the forum-selection clause to invalidate it, *see* 806 F.2d at 851-52, *Farmland*'s analysis of the fraud issue has been called into question. *See Braspetro Oil Servs. Co.—Brasoil v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 617 (5th Cir. 2007) (declining to follow *Farmland* as "it is inconsistent with our circuit's precedent that allegations of fraud in the inducement of a contract must relate specifically to the forum selection clause to render that clause unenforceable") (citing *Haynsworth*, 121 F.3d at 962-63); *Stephens v. Entre Computer Centers, Inc.*, 696 F. Supp. 636, 640 (N.D. Ga. 1988) (declining to follow *Farmland* after concluding that it was inconsistent with Supreme Court precedent) (citing *Scherk*, 417 U.S. at 519 n.14); *see also Clark*, 192 S.W.3d at 800 (enforcing forum-selection clause in case involving general claim of fraud in the inducement). Following the prevailing view in federal and Texas courts, we conclude that enforcement of the forum-selection clause in this case is not barred due to fraud or overreaching.

Based on our analysis, we conclude that the trial court did not abuse its discretion in dismissing Buyers' claims pursuant to the forum-selection clause.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   October 15, 2010